United States District Court
Southern District of Texas
**ENTERED**
April 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEMADARI CHINUA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00005 |
| | § | |
| JOEL GAUNA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS, TO RETAIN CASE, AND TO
DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Jemadari Chinua Williams, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. In a letter dated March 6, 2022, Plaintiff moves the Court for a temporary restraining order (TRO) and/or preliminary injunctive relief. (D.E. 12, p. 2). Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) First Amendment claims regarding meal service to Muslim inmates observing Ramadan against **Former Garza Unit Warden Joel Gauna and Chaplain Hall** in their individual capacities for monetary relief; (2) Eighth Amendment deliberate indifference claims regarding meal service to Muslim inmates observing Ramadan against **Former Garza Unit Warden Gauna and Food Service Captain Melanie Quiroga** in their individual capacities for monetary relief;

1 / 22

(3) First and Eighth Amendment claims related to the implementation of TDCJ's meal service policy during Ramadan be retained against **Executive Director Bryan Collier** in his official capacity for injunctive relief; and (4) a RLUIPA claim related to the implementation of TDCJ's meal service policy during Ramadan against **Executive Director Collier** in his official capacity for declaratory and injunctive relief.  Accordingly, it is respectfully recommended that these claims be **RETAINED.**  The undersigned will order service on these defendants.

The undersigned further recommends that: (1) **Access to Courts Supervisor Lori Rincon**, **Officer Alexander Mendoza, and Property Supervisor Jacquelyn Toscano** be **DISMISSED** from this action; (2) Plaintiff's claims for money damages against **Executive Director Collier** in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's First and Eighth Amendment claims seeking declaratory and injunctive relief against **Former Garza Unit Warden Gauna, Food Service Captain Quiroga, Chaplain Hall, and Assistant Warden K. Metz** be **DISMISSED**; (4) Plaintiff's remaining claims against Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and (5) Plaintiff's letter motion for a TRO and/or preliminary injunctive relief (D.E. 12) be **DENIED**.

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Huntsville Unit in Huntsville, Texas.  Plaintiff's claims and allegations in this action arise primarily in connection with his former assignment to the Garza West Unit in Beeville, Texas.

In this case, Plaintiff sues the following Garza West Unit and TDCJ officials: (1) Joel Gauna, the former Garza West Unit Warden; (2) Lori Rincon, Garza West Unit Access to Courts (ATC) Supervisor; (3) Bryan Collier, TDCJ Executive Director; (4) Hall, Garza West Chaplain; (5) Melanie Quiroga, Garza West Food Service Captain; (6) K. Metz, Assistant Warden; (7) Alexander Mendoza, Garza West Unit Officer; and (8) Jacquelyn Toscano, Property Supervisor.  Plaintiff sues Collier in his official an individual capacity and the other defendants in their individual capacity only.  (D.E. 12).  Plaintiff claims in his original complaint that Defendants violated his constitutional rights in numerous instances.  Plaintiff seeks declaratory, injunctive, and monetary relief.

A *Spears*[1] hearing was conducted on March 1, 2022.  As directed by the undersigned at the *Spears* hearing (D.E. 14, p. 42), Plaintiff filed an "Amended Complaint" on March

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

17, 2022.  (D.E. 13). The undersigned construes Plaintiff's "Amended Complaint" as a supplement to his original complaint.

In a separate Order, the undersigned concluded that Plaintiff has impermissibly attempted to join unrelated claims in one action.  The undersigned detailed Plaintiff's claims as falling under four groups of claims.  In the Order, the undersigned directed Plaintiff to file separate complaints with regard to his claims in Groups Two, Three, and Four.  Accordingly, the undersigned respectfully recommends that the following defendants named solely in connection with his claims in Groups Two, Three, and Four be dismissed without prejudice: (1) ATC Supervisor Rincon; (2) Officer Mendoza; and (3) Property Supervisor Toscano.

The undersigned further allowed Plaintiff to bring his related claims in Group One in this action.  With regard to these claims, Plaintiff has presented the following allegations either at the *Spears* hearing or in Plaintiff's original and supplemental complaint (D.E. 1, 13).

Plaintiff is a Muslim who has been practicing Islam since 2007.  (D.E. 1, p. 6; D.E. 14, p. 8).  Plaintiff is required to observe Ramadan, which is a mandatory tenet of Islam.  (D.E. 1, p. 11; D.E. 14, pp. 7-9).  Plaintiff describes the month-long Ramadan celebration as about "teaching self-restraint" and "drawing close to Allah."  (D.E. 14, p. 9).  Thus, during this period, Muslims "restrain themselves from eating from" sunrise to sunset. (D.E.

14, p. 9).  Despite this daily period of fasting, Muslims should not refrain from consuming "the same amount of food that [they] would during any other day."  (D.E. 14, p. 9).

Plaintiff was first assigned to the Garza West Unit after being taken into TDCJ custody, where he was housed from July 2020 through November 2021.  (D.E. 1, pp. 6, 14).  According to Plaintiff, TDCJ has a policy that permits its prison units to feed Muslim offenders who are observing Ramadan less food than they would feed every other inmate.  (D.E. 14, p. 7).  Plaintiff alleges Garza West Unit officials withheld a portion of Plaintiff's allotted food for practicing the Islamic faith during the Ramadan fast of 2021.  (D.E. 1, p. 6).  These officials took the position that Plaintiff was voluntarily sacrificing their lunchtime meals by fasting.  (D.E. 1, pp. 8, 14-15).

Inmates are required to be served 2100-2700 calories of food per day.  (D.E. 14, p. 7).  During the Ramadan celebration in 2021, which took place from mid-April to mid-May, Plaintiff received a small breakfast portion in the morning before sunrise and a dinner tray in the evening after sunset.  (D.E. 1, p. 11; D.E. 14, pp. 9-10).  Plaintiff's meals, however, were not supplemented to make up for calories missed during lunchtime.  (D.E. 14, p. 9).  Plaintiff alleges he was hungry and malnourished during Ramadan.  (D.E. 1, p. 11).  The TDCJ's policy of withholding the required daily intake of calories to Muslims observing Ramadan caused Plaintiff to question whether he should continue with his fasting.  (D.E. 14, p. 9).

Plaintiff clarified at the *Spears* hearing that, with regard to his Ramadan allegations, he also sought to raise a claim under the Religious Land Use and Institutionalized Persons

Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (D.E. 14, p. 17). Plaintiff set forth his RLUIPA claim in his supplemental complaint against Executive Director Collier in his official capacity, seeking injunctive and declaratory relief. (D.E. 13). Plaintiff believes that TDCJ Executive Director Collier, as the "final policymaker," is responsible for providing him with injunctive relief on his RLUIPA claim. (D.E. 14, p. 18).

Plaintiff alleges that Food Service Captain Quiroga was the official responsible for feeding inmates and for determining how much food Plaintiff was given during the month of Ramadan. (D.E. 14, p. 18). During his time as warden, Gauna was the final policymaker at the Garza West Unit and had the authority to order subordinate employees to provide calorically-adequate food to the Muslim offenders. (D.E. 14, pp. 18-19). Plaintiff believes that Quiroga initially denied calorically-adequate food to Plaintiff but that Gauna ultimately ratified that decision. (D.E. 14, p. 19). Gauna's designee, Assistant Warden Metz, rejected Plaintiff's Step 1 grievance by finding that Plaintiff had sacrificed his lunch meals by observing Ramadan. (D.E. 14, p. 19).

Plaintiff also consulted Chaplain Hall about how the food policy burdened his ability to observe his faith during Ramadan. (D.E. 14, p. 19). TDCJ policy authorizes the prison's chaplain services to help facilitate an offender's exercise of religious freedom and the unit's chaplain to provide appropriate recommendations to the unit's administration. (D.E. 14, pp. 19-20). The administration often follows the chaplain's recommendation unless it conflicts with a security issue. (D.E. 14, p. 20). Chaplain Hall, however, did

nothing to assist Plaintiff with regard to his meal service during Ramadan.  (D.E. 14, p.
20).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the
complaint and dismiss it without service of process if the Court finds the complaint
frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks
monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.
*See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis*
complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state
a claim upon which relief may be granted, or seeks monetary relief from an immune
defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v.
Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an
indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal
interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).
A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to
present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v.
Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true,
viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d
322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but
whether he is entitled to offer evidence to support his claim.  Thus, the Court should not

dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.    Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Plaintiff's claims seeking money damages against TDCJ Director Collier in his official capacity is barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claims for money damages against this defendant be dismissed.

### B.    Plaintiff's Constitutional and RLUIPA Claims

#### (1)  *Plaintiff's allegations*

Plaintiff's statements at his *Spears* hearing reflect that he is Muslim with a sincere faith in Islam.  He claims that the TDCJ's policy permitting prison units to feed Muslim

offenders who are observing Ramadan calorically-inadequate food places a substantial burden on his ability to practice his religion during Ramadan.  Plaintiff's allegations set forth in his pleadings and *Spears* hearing testimony reflect that several defendants played a role in determining how much food to provide Plaintiff during Ramadan.

According to Plaintiff, Food Manager Quiroga and former Warden Gauna each had decision-making authority as to the amount of food provided to Plaintiff and his fellow Muslim inmates during Ramadan.  (D.E. 14, pp. 18).  Plaintiff further alleges that Assistant Warden Metz rejected Plaintiff's Step 1 grievance on the grounds that Plaintiff had sacrificed his lunch meals by observing Ramadan.  (D.E. 14, p. 19).  Lastly, Plaintiff alleges that he consulted with Chaplain Hall regarding the issue of meal service during Ramadan but that Chaplain Hall provided no assistance despite having authority to provide appropriate recommendations to the Garza West Unit's administration on matters dealing with an offender's exercise of religious freedom.  (D.E. 14, pp. 19-20).

### (2)  *First Amendment*

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff's allegations, taken as true, indicate that decisions related to inmates' exercise of their particular religious faith hinged in part on recommendations issued by Chaplain Hall to the unit's administration led by former Warden Gauna, who was the final decision-maker.  At this early stage in the proceedings, Plaintiff's allegations are sufficient at this early stage in the case to state First Amendment claims against Defendants Gauna and Hall.  Accordingly, the undersigned respectfully recommends that Plaintiff's First Amendment claims regarding meal service to Muslim inmates observing Ramadan be retained against these defendants in their individual capacity for monetary relief.

### (3)    *Eighth Amendment*

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met.  "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need."  *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citation omitted).  To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm."  *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety."  *Woods*, 51 F.3d at 581 (internal quotations and citation omitted).  Deliberate indifference is more than mere negligence.  *Farmer*, 511 U.S. at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Id.* at 837.

On the issue of food, the prison system is not required to provide inmates with three meals a day.  *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).  "The constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health."  *Davis v. Stephens*, No. 2:15-CV-211, 2015 WL 4887577, at *8 (S.D. Tex. Aug. 17, 2015) (citing *Green*, 801 F.2d at 770-71).  Furthermore, "[w]ithout an allegation of resulting harm, complaints regarding food service practices

simply are not of constitutional dimension." *See Billizone v. Jefferson Parish Correctional Center*, No. 14-1263, 2015 WL 1897683, at *5 (E.D. La. Apr. 27, 2015) (internal quotations and citations omitted).

Plaintiff's allegations, taken as true, indicate that decisions regarding inmate meal service rest with former Warden Gauna and Food Service Captain Quiroga. Based on the lack of calories provided to him during Ramadan, Plaintiff complained that he was hungry and malnourished. (D.E. 1, p. 11). Plaintiff's allegations are sufficient at this early stage in the case to state Eighth Amendment claims of deliberate indifference claims against Defendants Gauna and Quiroga. Accordingly, the undersigned respectfully recommends that these Eighth Amendment claims regarding meal service to Muslim inmates observing Ramadan be retained against these defendants in their individual capacity for monetary relief.

### (4)      *Grievance Process*

Plaintiff appears to claim that Assistant Warden Metz violated his constitutional rights when he rejected Plaintiff's Step 1 grievance on the grounds that Plaintiff had sacrificed his lunch meals by observing Ramadan. (D.E. 14, p. 19). Plaintiff's allegation regarding Metz's failure to rule in Plaintiff's favor on his grievance, however, fails to state a cognizable constitutional claim. *See Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor). Accordingly, the undersigned recommends

that Plaintiff's claims against Assistant Warden Metz be dismissed as frivolous and/or for failure to state a claim.

### (5)    *Injunctive Relief*

Plaintiff seeks injunctive relief with respect to his constitutional claims. Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. U.S. Const., Art. III, § 2. This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case. *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). A live controversy must exist at every stage of the litigation. *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In other words, if a controversy between parties resolves to the point that they no longer qualify as "'adverse parties with sufficient legal interests to maintain the litigation,'" a court is without power to entertain the particular claim. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)). Courts, therefore, lack "constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Generally, where an inmate challenges conditions of confinement at a particular prison facility, the transfer of the inmate out of that facility generally renders moot any

claims for injunctive or declaratory relief moot against defendants at that unit. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that plaintiff's transfer to a different prison facility rendered his claims for declaratory and injunctive relief moot); *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex. Dec. 11, 2017) (holding that a prisoner's transfer from a prison unit renders moot his claims of deliberate indifference to his health when seeking injunctive relief against the defendants at that unit).

Despite this general rule, an exception to the mootness doctrine lies in controversies that are "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). The exception is available where "'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (alterations in original) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

In certain circumstances where an inmate is transferred to another prison, an inmate may avoid dismissal on mootness grounds by identifying in his complaint a statewide or prison-system policy that led to the constitutional violations which remain ongoing at the new prison unit. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), 276 F.3d at 741. *See also Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir. 2004) (reversing district court's

dismissal of inmate's complaint on mootness grounds, concluding that inmate was not seeking injunctive relief for a condition specific to a particular prison, but rather was seeking relief from a condition that stems from a system-wide policy). Such allegations of a system-wide policy relate to the principle as to whether an alleged constitutional violation is "capable of repetition yet evading review." *Oliver*, 276 F.3d at 741 (citation omitted).

Plaintiff is no longer housed at the West Garza Unit. At the time he filed this complaint, he was housed at the Byrd Unit in Huntsville, Texas. (D.E. 1 at 1). He is currently housed at the Huntsville Unit. (D.E. 15). Nevertheless, with respect to his claims, Plaintiff has identified a system-wide TDCJ policy which permits its prison units to feed Muslim offenders who are observing Ramadan less food than they would feed every other inmate. Pursuant to this policy, Plaintiff may again be subject to the same alleged acts that form the basis of his First and Eighth Amendment claims during observance of Ramadan in the future. *See Kingdomware Techs., Inc*, 579 U.S. at 170.

Accordingly, the undersigned respectfully recommends that Plaintiff's First and Eighth Amendment claims related to the implementation of TDCJ's meal service policy during Ramadan be retained against Executive Director Collier in his official capacity for injunctive relief. *See Lehn*, 364 F.3d at 871-72 (rejecting dismissal of inmate's § 1983 case on the basis of mootness as he named the state prison system's director and sought relief from a system-wide policy).

Plaintiff's constitutional claims seeking injunctive relief against the remaining defendants, however, should be dismissed for lack of Article III standing. Defendants

Gauna, Quiroga, Hall, and Metz were employed at the Garza West Unit at all relevant times. In contrast to Executive Director Collier, each of these defendants lacks the authority to effectuate any prospective injunctive relief on behalf of Plaintiff, who is currently housed at a different prison. *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) ("[P]laintiff does not have standing to pursue injunctive relief because [defendant] is without authority to redress his injuries."); *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged). Accordingly, the undersigned respectfully recommends that Plaintiff's First and Eighth Amendment claims seeking injunctive and declaratory relief against Defendants Gauna, Quiroga, Hall, and Metz be dismissed.

### *(6)* *RLUIPA*

The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden both "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The statute also provides for a cause of action for a RLUIPA violation. 42 U.S.C. § 2000cc–2(a).

Under the RLUIPA, a plaintiff bears the initial burden of showing that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Criminal Justice.*, 529 F.3d 599, 613 (5th Cir. 2008). Religious

exercise is substantially burdened if the burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Once the plaintiff meets his initial burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield*, 529 F.3d at 613.

Plaintiff brings his RLUIPA claim against Executive Director Collier in his official capacity.  Plaintiff's allegations are sufficient at this stage in the proceedings to warrant further factual development of his RLUIPA claim.  Accordingly, the undersigned respectfully recommends that Plaintiff's RLUIPA claim related to the implementation of TDCJ's meal service policy during Ramadan be retained against Executive Director Collier in his official capacity for declaratory and injunctive relief.

### C.    Motion for A TRO and/or Preliminary Injunctive Relief

Plaintiff moves the Court for a TRO and/or preliminary injunctive relief.  (D.E. 12, p. 2).  Plaintiff states that Ramadan begins on April 4, 2022.  Because TDCJ's policy remains in place, Plaintiff believes that he will be subjected to the same constitutional and RLUIPA violations at his current housing assignment.  (D.E. 12, p. 2).

A TRO "should be restricted to serving [the] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Local*

*No. 70,* 415 U.S. 423, 439 (1974). A party may obtain a TRO without notice to the other side if:

> (A)     specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B)     the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiff has alleged no facts in his motion showing that "immediate and irreparable injury, loss, or damage" occurred before Defendants could be heard in this case. He further has provided no written certification of any efforts made to give notice or proffer any reasons why notice should not be required. Plaintiff, therefore, is not entitled to a TRO at this time.

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a

preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

To obtain preliminary injunctive relief, Plaintiff first must demonstrate a likelihood of success on the merits of his lawsuit. *Sepulvado*, 729 F.3d at 417. The posture of this case is in the early stage, and the parties have not conducted any discovery in this case with respect to Plaintiff's claims. Plaintiff otherwise fails to argue or otherwise show a likelihood of success at this time with respect to the merits of his constitutional and RLUIPA claims. Because Plaintiff cannot carry his burden as to all four elements, he cannot demonstrate an entitlement to a preliminary injunction as this time.

## V.    RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state (1) First Amendment claims regarding meal service to Muslim inmates observing Ramadan against **Former Garza Unit Warden Gauna and Chaplain Hall** in their individual capacities for monetary relief; (2) Eighth Amendment deliberate indifference claims regarding meal service to Muslim inmates observing Ramadan against **Former Garza Unit Warden Gauna and Food Service Captain Quiroga** in their individual capacities for monetary relief; (3) First and Eighth Amendment claims related to the implementation of TDCJ's meal service policy during Ramadan be retained against **Executive Director Collier** in his official capacity for injunctive relief; and (4) a RLUIPA claim related to the implementation of TDCJ's meal service policy during Ramadan against **Executive Director Collier** in his official capacity for declaratory and injunctive relief. Accordingly,

20 / 22

it is respectfully recommended that these claims be **RETAINED**.  The undersigned will order service as to these defendants by separate order.

The undersigned further respectfully recommends that: (1) **Access to Courts Supervisor Rincon**, **Officer Mendoza, and Property Supervisor Toscano** be **DISMISSED** from this action; (2) Plaintiff's claims for money damages against **Executive Director Collier** in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; (3) Plaintiff's First and Eighth Amendment claims seeking declaratory and injunctive relief against **Former Garza Unit Warden Gauna, Food Service Captain Quiroga, Chaplain Hall, and Assistant Warden Metz** be **DISMISSED**; (4) Plaintiff's remaining claims against Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and (5) Plaintiff's letter motion for a TRO and/or preliminary injunctive relief (D.E. 12) be **DENIED**.

Respectfully submitted on April 19, 2022.

Jason B. Libby
United States Magistrate Judge

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).