Case 2:22-cv-00005 Document 49 Filed on 12/20/22 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
December 20, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEMADARI CHINUA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00005 |
| | § | |
| JOEL GAUNA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DENY DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Jamadari Chinua Williams, an inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are: (1) a Motion to Dismiss filed by Bryan Collier and Joel Gauna (D.E. 26); and (2) a Motion to Dismiss filed by Melanie Quiroga (D.E. 33). For the reasons set forth below, the undersigned respectfully recommends that these motions to dismiss be denied in their entirety.

**I.    JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently residing at the Byrd Unit in Huntsville, Texas. Plaintiff's claims and allegations arise primarily in connection with his former housing assignment to the Garza West Unit in Beeville, Texas.

In the original complaint, Plaintiff named the following Garza West Unit and TDCJ officials as defendants in this case: (1) Joel Gauna (Gauna), the former Garza West Unit Warden; (2) Lori Rincon (Rincon), Garza West Unit Access to Courts (ATC) Supervisor; (3) Bryan Collier (Collier), TDCJ Executive Director; (4) Hall, Garza West Chaplain; (5) Melanie Quiroga (Quiroga), Garza West Food Service Captain; (6) K. Metz (Metz), Assistant Warden; (7) Alexander Mendoza (Mendoza), Garza West Unit Officer; and (8) Jacquelyn Toscano (Toscano), Property Supervisor. (D.E. 1). Plaintiff sued Collier in his official individual capacity and the other defendants in their individual capacities only. (D.E. 13). Plaintiff claimed in his original complaint that Defendants violated his constitutional rights in numerous instances. Plaintiff sought declaratory, injunctive, and monetary relief.

A *Spears*[1] hearing was conducted on March 1, 2022. Plaintiff filed an "Amended Complaint" on March 17, 2022, which was construed as a supplement to his original complaint. (D.E. 13). In a Memorandum and Recommendation issued on April 19, 2022 (M&R), the undersigned recommended that the Court retain Plaintiff's:

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

(1) First Amendment claims regarding meal service to Muslim inmates observing Ramadan against Gauna and Hall in their individual capacities for monetary relief;

(2) Eighth Amendment deliberate indifference claims regarding meal service to Muslim inmates observing Ramadan against Gauna and Quiroga in their individual capacities for monetary relief;

(3) First and Eighth Amendment claims related to the implementation of TDCJ's meal service policy during Ramadan against Collier in his official capacity for injunctive relief; and

(4) RLUIPA claim related to the implementation of TDCJ's meal service policy during Ramadan against Collier in his official capacity for declaratory and injunctive relief.

(D.E. 18, p. 20). The undersigned recommended dismissing the remaining claims against the remaining defendants. (*Id.* at 20-21). United States District Judge David A. Morales adopted the M&R in its entirety on May 18, 2022. (D.E. 22).

On May 19, 2022, the undersigned granted Plaintiff's motion to file a second supplemental complaint in which he sought to add allegations related to his retained claims. (D.E. 21, 23). Plaintiff's supplemental allegations were docketed as Plaintiff's Second Supplemental Amended Complaint. (D.E. 24).

On June 3, 2022, Collier and Hall filed an answer. (D.E. 25). That same day, Collier and Gauna filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 26). On July 22, 2022, Quiroga filed her Rule 12(b)(1) and 12(b)(6) Motion to Dismiss. (D.E. 33). Plaintiff has filed two responses to these motions. (D.E. 34, 37).

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleged the following relevant facts. Plaintiff is a Muslim who has been practicing Islam since 2007. (D.E. 1, p. 6; D.E. 14, p. 8). Plaintiff is required to observe Ramadan, which is a mandatory tenet of Islam. (D.E. 1, p. 11; D.E. 14, pp. 7-9). Plaintiff described the month-long Ramadan celebration as about "teaching self-restraint" and "drawing close to Allah." (D.E. 14, p. 9). Thus, during this period, Muslims "restrain themselves from eating from" sunrise to sunset. (D.E. 14, p. 9). Despite this daily period of fasting, Muslims should not refrain from consuming "the same amount of food that [they] would during any other day." (D.E. 14, p. 9).

Plaintiff was first assigned to the Garza West Unit after being taken into TDCJ custody, where he was housed from July 2020 through November 2021. (D.E. 1, pp. 6, 14). According to Plaintiff, TDCJ has a policy that permits its prison units to feed Muslim offenders who are observing Ramadan less food than they would feed every other inmate. (D.E. 14, p. 7). Plaintiff alleged Garza West Unit officials withheld a portion of Plaintiff's allotted food for practicing the Islamic faith during the Ramadan fast of 2021. (D.E. 1, p. 6). These officials took the position that Plaintiff had voluntarily sacrificed his lunchtime meals by fasting. (D.E. 1, pp. 8, 14-15).

Inmates are required to be served 2100-2700 calories of food per day. (D.E. 14, p. 7). According to TDCJ's meal planning policies, the regular menu for inmates provides between 2400 and 2700 calories per day. (D.E. 24, p. 2). During the Ramadan celebration in 2021, which took place from mid-April to mid-May, Plaintiff received a small breakfast portion in the morning before sunrise and a dinner tray in the evening after sunset. (D.E. 1, p. 11; D.E.

14, pp. 9-10). Plaintiff's meals, however, were not supplemented to make up for calories missed during lunchtime. (D.E. 14, p. 9). Plaintiff alleged he was hungry and malnourished during Ramadan. (D.E. 1, p. 11). He further complained that he suffered the following during Ramadan: dizziness, abdominal pains, muscle cramps, dehydration, tremors, and disorientation. (D.E. 24, p. 3). The TDCJ's policy of withholding the required daily intake of calories to Muslims observing Ramadan caused Plaintiff to question whether he should continue with his fasting and ultimately forced him to break his fast by consuming commissary items in violation of his religious beliefs. (D.E. 14, p. 9; D.E. 24, p. 3).

Plaintiff alleged that Quiroga was the official responsible for feeding inmates and for determining how much food Plaintiff was given during the month of Ramadan. (D.E. 14, p. 18). During his time as warden, Gauna was the final policymaker at the Garza West Unit and had the authority to order subordinate employees to provide calorically-adequate food to the Muslim offenders. (D.E. 14, pp. 18-19). Plaintiff believed that Quiroga initially denied calorically-adequate food to Plaintiff and that Gauna ultimately ratified that decision. (D.E. 14, p. 19). With respect to his RLUIPA claim, Plaintiff seeks to hold Collier responsible as the final policymaker and the individual responsible for providing injunctive relief. (D.E. 13, p. 2; D.E. 14, pp. 17-18).

## IV. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law

deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

In their respective motions to dismiss, Collier, Gauna, and Quiroga (collectively "Defendants") move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (D.E. 26, 33). Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55.

## V. DISCUSSION

### A. Eleventh Amendment Immunity

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Id.* The Eleventh Amendment bar, when it applies, implicates the Court's subject-matter jurisdiction. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Additionally, because RLUIPA does not waive the state's Eleventh Amendment immunity, monetary damages are not available for claims brought against state officials under RLUIPA. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 335 (5th Cir. 2009), *aff'd sub. nom., Sossamon v. Texas*, 563 U.S. 277 (2011).

*Ex parte Young* provides "an equitable exception to Eleventh Amendment sovereign immunity ... [that] allows plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law." *Air Evac EMS,*

*Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159–160 (1908)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

The *Ex parte Young* exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Likewise, to fall within the *Ex parte Young* exception, "claims requesting declaratory relief must 'demonstrate the ongoing nature of the alleged unconstitutional conduct.'" *Stollings v. Texas Tech University*, No. 5:20-CV-250-H, 2022 WL 824842, at *6 (N.D. Tex. Mar. 18, 2022) (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015)). *See also Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (finding that *Ex parte Young* exception was not met where plaintiff sought declaratory relief against state officials because plaintiff focused on past behavior and did not allege that officials were "currently engaged in any of those behaviors or that any such actions [were] imminent").

Gauna and Collier assert that Plaintiff's claims against Collier in his official capacity are barred by the Eleventh Amendment because Plaintiff "has not alleged an ongoing violation of federal law that would allow the claims to survive under the *Ex parte Young* doctrine." (D.E. 26, pp. 2-3).  They contend that: (1) the complained-of events occurred at the Garza West Unit, where he is no longer housed; (2) Plaintiff alleges no specific facts to suggest that Collier was personally involved in food services during Ramadan at the Garza West Unit; and (3) Plaintiff alleges no facts showing that the alleged violations are ongoing at his current housing unit. (*Id.* at 4).   Plaintiff responds that "Collier continues to practice an ongoing policy that is unconstitutional, and which places [an] undue burden on Plaintiff's religious observance during Ramadan." (D.E. 34, pp. 1-2).

As discussed in detail below, Plaintiff has stated plausible claims under RLUIPA as well as the First and Eighth Amendments.  Plaintiff's requests for declaratory and injunctive relief seek to change or modify existing TDCJ policies or practices which currently permit its prison units to feed Muslim offenders who are observing Ramadan less food than they would feed other inmates during that time period. Plaintiff's allegations reflect that any possible violations of his federal rights under existing policies and practices remain ongoing as he will again be subject to the same alleged acts that form the basis of his claims during future Ramadan observances.

Accepting Plaintiff's allegations as true, the undersigned concludes that the declaratory and injunctive relief sought by Plaintiff seeks prospective relief to address the alleged ongoing harm.  Because the *Ex parte Young* exception may apply in this case, Gauna and Collier's Motion to Dismiss (D.E. 26) should be denied as to whether Plaintiff's claims seeking

prospective injunctive and declaratory relief against Collier in his official capacity are barred by the Eleventh Amendment.

### B.  RLUIPA Claim

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden both "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The statute also provides for a cause of action for a RLUIPA violation. 42 U.S.C. § 2000cc–2(a). Congress enacted RLUIPA to provide broad protection for religious liberty. *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

A plaintiff has the initial burden under RLUIPA of showing the sincerity of his religious beliefs. *See Moussazadeh v. Tex. Dept. of Crim. Justice,* 703 F.3d 781, 790-92 (5th Cir. 2012). A plaintiff then bears the burden of showing that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Crim. Justice*, 529 F.3d 599, 613 (5th Cir. 2008). Plaintiff must show that a government practice imposes a "substantial burden" on his religious exercise, which requires the Court to determine: (1) whether the burdened activity is "religious exercise," and if so, (2) is the burden "substantial"? *Adkins v. Kaspar,* 393 F.3d 559, 567 (5th Cir. 2004). RLUIPA defines "religious exercise" to include "any exercise of religion," whether or not compelled by, or central to, a system of religious beliefs." *Id.*; 42 U.S.C. § 2000cc–5(7)(A).

A government action, practice, or regulation creates a substantial burden on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and

significantly violates his religious beliefs. *Adkins*, 393 F.3d at 570. Whether or not the challenged government action, practice, or regulation imposes a substantial burden on the complainant's exercise of the religious belief in question requires a case by case, fact-specific inquiry. *Mayfield*, 529 F.3d at 613; *Adkins*, 393 F.3d at 570. Once the plaintiff meets his initial burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield*, 529 F.3d at 613.

The Court has retained a RLUIPA claim against Collier in his official capacity for declaratory and injunctive relief related to the implementation of TDCJ's meal service policy during Ramadan. Nevertheless, while apparently confining his arguments to Plaintiff's § 1983 claims, Gauna and Collier contend Plaintiff has pled no facts to indicate that Collier was personally involved in the alleged conduct or was the final policymaker. (D.E. 26, p. 6). Plaintiff responds that Collier is in fact the final policymaker with respect to TDCJ's meal service policy during Ramadan and that Collier, therefore, has the authority to change the official policy. (D.E. 34, pp. 2-3).

Plaintiff's allegations reflect that his Muslim faith is sincere. He further alleges that: (1) TDCJ has a policy that permits its prison units to feed Muslim offenders who are observing Ramadan less food than they would feed every other inmate; (2) as a result of TDCJ's meal service policy, he became hungry and malnourished during Ramada; and (3) the TDCJ's policy of withholding the required daily intake of calories to Muslims observing Ramadan caused Plaintiff to question whether he should continue with his fasting and ultimately forced him to break his fast by consuming commissary items in violation of his

11 / 20

religious beliefs. (D.E. 14, pp. 7-9; D.E. 24, p. 3). Plaintiff's allegations further indicate that Collier is the final policymaker with respect to this meal service policy during Ramadan with the authority to implement and make appropriate changes to it. (D.E. 13, p. 2; D.E. 14, pp. 17-18).

As noted above, courts must undertake a case by case, fact-specific inquiry into whether a governmental policy or practice places a substantial burden on an inmate's exercise of his religious belief. *Mayfield*, 529 F.3d at 613. Plaintiff's allegations, accepted as true, indicate that TDCJ's meal service policy created a substantial burden on a religious exercise because it influenced Plaintiff into violating his Muslim beliefs associated with fasting during Ramadan. *See Johnson v. Wainwright*, No. 2:19-CV-341, 2021 WL 2472929, at *3 (S.D. Tex. June 17, 2021) (concluding that inmate had "pled a substantial burden" by alleging that "the prison policies influenced him to violate his religious beliefs).

Accepting Plaintiff's allegations as true, they are sufficient to state at this early stage in the litigation a RLUIPA claim against Collier in his official capacity for declaratory and injunctive relief. *See Holt*, 574 U.S. at 357 (recognizing that RLUIPA protections are expansive and are to be construed broadly to favor the maximum religious liberty appropriate in an institutional setting). Accordingly, Gauna and Collier's Motion to Dismiss (D.E. 26) should be denied as to Plaintiff's RLUIPA claim against Collier.

    **C.  First Amendment**

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While a prisoner retains his First Amendment rights, including the right to free exercise of religion,

he only retain those rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield*, 529 F.3d at 607 (citation omitted).

The Court has retained Plaintiff's: (1) First Amendment claims regarding meal service to Muslim inmates observing Ramadan against Gauna and Hall in their individual capacities for monetary relief; and (2) First Amendment claims related to the implementation of TDCJ's

meal service policy during Ramadan against Collier in his official capacity for injunctive relief.

Defendants Gauna and Collier contend that Plaintiff has pled no facts to indicate they were personally involved in the alleged conduct forming the basis of Plaintiff's First Amendment claim. (D.E. 26, p. 6). These defendants further contend that Plaintiff has made only conclusory allegations that Collier and Gauna should be held responsible due to their positions of authority. (*Id.* at 7).

Plaintiff responds that Gauna failed to ensure that he and other Muslims observing Ramadan were fed the same as non-Muslims, which caused Plaintiff to break his religious fast. (D.E. 34-1, p. 3). He further argues that Collier has implemented and ratified the TDCJ policy which arbitrarily discriminates against Muslims and results in an ongoing violation of Plaintiff's constitutional rights. (*Id.* at 3-4).

Plaintiff alleges that: (1) Gauna was the final policymaker at the Garza West Unit who had the authority to order subordinate employees to provide calorically-adequate food to the Muslim offenders; and (2) Collier is the final policymaker with respect to the meal service policy during Ramadan with the authority to implement and make appropriate changes to it. (D.E. 13, p. 2; D.E. 14, pp. 17-19). Plaintiff's allegations suggest that Gauna played a key decision-making role at the McConnell Unit regarding meal service during Ramadan and that Collier has the authority to grant the requested injunctive relief in changing the system-wide TDCJ meal service policy.

Plaintiff's allegations, accepted as true, are sufficient at this early stage in the proceedings to state First Amendment claims against Gauna in his individual capacity for

monetary relief and Collier in his official capacity for declaratory and injunctive relief. Accordingly, Gauna and Collier's Motion to Dismiss (D.E. 26) should be denied as to Plaintiff's First Amendment claims against them.

### D. Eighth Amendment

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official

must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

On the issue of food, the prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). "The constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health." *Davis v. Stephens*, No. 2:15-CV-211, 2015 WL 4887577, at *8 (S.D. Tex. Aug. 17, 2015) (citing *Green*, 801 F.2d at 770-71). Furthermore, "[w]ithout an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension." *See Billizone v. Jefferson Parish Correctional Center*, No. 14-1263, 2015 WL 1897683, at *5 (E.D. La. Apr. 27, 2015) (internal quotations and citations omitted).

The Court has retained Plaintiff's: (1) Eighth Amendment claims regarding meal service to Muslim inmates observing Ramadan against Gauna and Quiroga in their individual capacities for monetary relief; and (2) Eighth Amendment claims related to the implementation of TDCJ's meal service policy during Ramadan against Collier in his official capacity for injunctive relief.

Defendants contend Plaintiff has pled no facts to indicate they were personally involved in the alleged conduct forming the basis of Plaintiff's Eighth Amendment claims. (D.E. 26, pp. 6-7; D.E. 33, pp. 3-4). Defendants further maintain that violations of TDCJ's internal regulations regarding its food service policies do not create a private cause of action under the Eighth Amendment. (D.E. 26, pp. 7-8; D.E. 33, p. 5). They rely on the proposition

that, even if the alleged TDCJ meal service policies have been violated, "[a] state's failure to follow its own procedural regulations does not constitute a violation of due process, because 'constitutional minima may nevertheless have been met.'" *Jackson v. Cain*, 864 F.2d 1235, 1251, (5th Cir. 1989) (quoting *Brown v. Texas A&M University*, 804 F.2d 327, 335 (5th Cir. 1986).

Plaintiff responds that he has a constitutional right to adequate nutrition and that both Gauna and Quiroga failed to ensure that Plaintiff received adequate nutrition during Ramadan. (D.E. 34, p. 5; D.E. 37, p. 2). Plaintiff also contends that he need not allege that Collier personally participated as he has been sued in his official capacity with the ability to change the existing meal service policies. (D.E. 34, pp. 3-4).

Plaintiff alleges the following relevant facts: (1) during the Ramadan celebration in 2021, Plaintiff received a small breakfast portion in the morning before sunrise and a dinner tray in the evening after sunset; (2) Plaintiff did not receive any supplemental food to make up for the missed lunch-time meal; (3) Plaintiff was malnourished during Ramadan leading to dizziness, abdominal pains, muscle cramps, dehydration, tremors, and disorientation; (4) both Quiroga and Gauna were decision-makers at the prison unit level in determining how much food Plaintiff was given during the month of Ramadan; and (5) Collier is the final policymaker with the ability to change the applicable TDCJ policies regarding meal service. (D.E. 1, p. 11; D.E. 14, pp. 9-11, 17-19; D.E. 24, p. 3).

Plaintiff's allegations, taken as true, are sufficient at this early stage in the case to state Eighth Amendment claims of deliberate indifference claims against Defendants. Further factual and legal development of Plaintiff's deliberate indifference claims are necessary to

determine whether the implementation of TDCJ's meal service policy violates his Eight Amendment rights and whether either Gauna or Quiroga at the prison unit level engaged in conduct deliberately indifferent to Plaintiff's health. Accordingly, the undersigned respectfully recommends that these Eighth Amendment claims regarding meal service to Muslim inmates observing Ramadan be retained against Gauna and Quiroga in their individual capacities for monetary relief and Collier in his official capacity for injunctive relief.

### E.   Qualified Immunity

Gauna and Quiroga contend they are entitled to qualified immunity with regard to Plaintiff's First and Eight Amendment claims raised against them in their individual capacities. (D.E. 26, pp. 8-11; D.E. 33, pp. 6-8). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively unreasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

Plaintiff, as discussed above, has stated plausible First and Eighth Amendment claims against Gauna in his individual capacity and a plausible Eighth Amendment claim against Quiroga in her individual capacity. Based on Plaintiff's allegations, the undersigned cannot conclude at this time that either Gauna or Quiroga acted objectively reasonable in connection with these claims in light of clearly established law. Accordingly, the undersigned respectfully recommends that Defendants' motions to dismiss (D.E. 26, 33) be denied on the issue of qualified immunity as to these claims.[2]

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motions to dismiss (D.E. 26, 33) be **DENIED in their entirety**.

Respectfully submitted on December 20, 2022.

Jason B. Libby
United States Magistrate Judge

---

[2] Defendants may reassert the defense of qualified immunity in their motions for summary judgment. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).